1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  Sonia Cruz-Baca,                ) Case No. **CV 14-7887-JFW (MANx)**
                                    )
12              Plaintiff,          ) **FINDINGS OF FACT AND**
                                    ) **CONCLUSIONS OF LAW**
13       v.                         )
                                    )
14  Edison International Long       )
    Term Disability Plan,           )
15                                  )
                Defendant.          )
16  _____  )

17

18                    **<u>Introduction</u>**

19       Plaintiff Sonia Cruz-Baca ("Plaintiff") brings this

20  action under the Employee Retirement Income Security Act

21  ("ERISA") against Southern California Edison Company Long

22  Term Disability Plan (erroneously sued as Edison

23  International Long Term Disability Plan) (the "Plan").

24  Before the Court is Plaintiff's claim that she meets the

25  Plan's definition of disability and is entitled to

26  reinstatement of her long term disability ("LTD") benefits.

27  The parties have agreed to forego the court trial that was

28  scheduled for October 27, 2015 in this action.

After considering the parties' submissions and the administrative record, the Court makes the following findings of fact and conclusions of law:

## Findings Of Fact[1]

Plaintiff was employed by Southern California Edison Company ("SCE") as a Customer Specialist 2, and, as an employee, was eligible to participate in the Plan.[2]

On October 15, 2010, Plaintiff left work due to her chronic pain and rheumatoid arthritis, and applied for benefits through SCE's Comprehensive Disability Program ("CDP").  AR, SCE002098 and SCE002295.  Plaintiff was found to be disabled, and her short term disability benefits were approved, effective October 15, 2010. AR, SCE001738-1739. Plaintiff was approved for Long Term Disability ("LTD") benefits under the Plan, effective April 14, 2011, after

---

[1] The Court has elected to issue its decision in narrative form because a narrative format more fully explains the reasons supporting the Court's conclusions.  Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

[2] The Plan's administrator is the Southern California Edison Company Benefits Committee ("Committee").  AR, SCE001140.  Claims are administered by Sedgwick Claims Management Services ("Sedgwick").  Declaration of Deborah Jacobs ("Jacobs Decl."), Exh. A.  Under the Plan's coordination of benefits provisions, Plaintiff applied for and received Social Security disability ("SSDI") benefits in January 2012.  AR, SCE001748-1750.  Plaintiff's application for SSDI benefits was initially denied, but she ultimately obtained SSDI benefits following an appeals process.  AR, SCE001720-1726 and SCE001748-1750.

1

2   satisfying the six month qualifying period.  AR,

3   SCE001647-1648.

4       The Plan terminated Plaintiff's benefits on May 19, 2014

5   because it was determined that she no longer satisfied the

6   Plan's definition of disabled.  AR, SCE002096-002098.

7   Plaintiff appealed the termination of her benefits, and the

8   Plan denied Plaintiff's appeal.  AR, SCE002295-002298.

9   **A.    The Plan**

10      The Plan defines "disability" as follows:

11          Disabled means that, due to illness or injury, you

12          are unable to perform your regular and customary job

13          for the first two years of your disability and any

14          reasonable job for the company after two years.

15          Your disability must be substantiated by medical

16          evidence from a qualified physician specializing in

17          the area of your disability.

18   AR, SCE001010.

19      In addition, the Plan defines "reasonable job" as "any

20   gainful activity in any job classification for which you are

21   or may reasonably become fitted by education, training, or

22   experience."  Moreover, the Plan defines "medical evidence"

23   as:

24          evidence supported by a meaningful clinical

25          evaluation and, where applicable, reasonable and

26          appropriate diagnostic testing.  The physician's

27          report must state the reasons and factual basis for

28          her or his conclusion that you are disabled.  A

3

1          physician's opinion that you are disabled is
2          insufficient if it is not supported by such medical
3          evidence.
4    AR, SCE001011.
5          The Plan states that the Committee may designate other
6    persons or entities to carry out its discretionary duties:
7          The Southern California Edison Company Benefits
8          Committee serves as plan administrator to each of
9          the plans and has the full and final power and
10         discretionary authority to determine eligibility to
11         participate in the plans, to determine covered
12         benefits, and to interpret, construe and apply the
13         terms and provisions of the plans. The Committee may
14         designate one or more persons to carry out those
15         responsibilities.
16   AR, SCE001140.
17         The Plan also states that the Committee has delegated the
18   LTD Eligibility and Appeals process to the LTD Claims
19   administrator.  With respect to LTD Eligibility, the Plan
20   states that: "[t]he LTD administrator has discretion to
21   review and evaluate all medical evidence for non-represented
22   employees and to make factual determinations as to
23   eligibility for LTD benefits."  With respect to the Appeals
24   process, the Plan document states that:
25         The LTD claims administrator will make a
26         determination on your continued eligibility for
27         benefits based on all the medical documentation
28         available.  If you disagree with the administrator's

4

1   decision you have the right to appeal the decision.
2   If the decision on your claim is based on a medical
3   judgment, it will be referred by the LTD claims
4   administrator to a pre-established panel of
5   board-certified physicians within the appropriate
6   specialty . . . If two out of three physicians agree
7   you are disabled, then your LTD benefits will be
8   approved.

9   AR, SCE001017.

10      Pursuant to the Disability Administrative Services
11  Agreement ("ASA") between SCE and Sedgwick, at all relevant
12  times in this action, Sedgwick has been the Plan's LTD claims
13  administrator.   The ASA describes Sedgwick's role and duties
14  with respect to administrative decision making relating to
15  the Plan.   Moreover, the ASA delegated the LTD claims process
16  to Sedgwick, including provisions granting discretion to
17  Sedgwick to make determinations regarding LTD benefits and
18  appeals.   Specifically, the Statement of Work provisions of
19  the ASA state clearly that SCE has delegated decision making
20  and administration of all LTD claims to Sedgwick in Sections
21  6 (ERISA & Voluntary Plan Administration), 7 (LTD Transition
22  Activities), and 11 (Denials, Appeals & Exams/Reviews).
23  Jacobs Decl., Exh. A.   For example, Section 6.4(a) of the
24  Statement of Work clearly indicates that SCE has delegated to
25  Sedgwick the authority to determine benefit eligibility per
26  plan benefit specifications, including: reviewing
27  pre-existing condition for LTD and EDD referrals and
28  simultaneous coverage for CDP.   *Id.*   Section 6.5(c) of the

Statement of Work clearly indicates that SCE has delegated to Sedgwick the authority to review disability status with each submission of updated clinical information, including but not limited to objective and subjective clinical findings, lab and other test results, and examination records. *Id.* Section 7.1(b) of the Statement of Work clearly indicates that SCE has delegated to Sedgwick the authority to make LTD claim determinations at least 5 business days prior to LTD effective date. *Id.* Finally, Sections 11.1, 11.2, and 11.3 of the Statement of Work clearly indicate that SCE has delegated to Sedgwick the authority to handle denials of ERISA claims, responsibility for IME evaluations and making claim determinations based on IME evaluations, and conducting the LTD appeals process in accordance with the plan and EDD/ERISA regulations, including obtaining medical record reviews (MRR) and in-person IMEs and FCEs. *Id.*

**B.   Plaintiff's 2012 Independent Medical Examination**

After Plaintiff had been receiving disability benefits for approximately two years, the Plan requested Dr. Saleem Waraich to perform an Independent Medical Examination ("IME") of Plaintiff.  AR, SCE001966-1979.  Dr. Waraich reviewed all of Plaintiff's medical records that were available to Sedgwick as well as a Job Analysis describing Plaintiff's Customer Specialist 2 position.  AR, SCE001966-1968.  The Job Analysis provided to Dr. Waraich was out of date, and it assumed more keyboarding than the job required because it did not take into account the use of the Dragon Naturally

1   Speaking ("DNS") software.[3]  AR, SCE000035-000036,

2   SCE001827-1840, and SCE001968.

3       In his report dated August 30, 2012, Dr. Waraich

4   concluded that Plaintiff was suffering from rheumatoid

5   arthritis, osteoarthritis, degenerative disc disease of the

6   lumbar spine, and fibromyalgia.  AR, SCE001974.  Dr. Waraich

7   found that, as a result of the combination of each of the

8   foregoing conditions, Plaintiff was restricted in her ability

9   to lift, carry, push, and pull with her upper extremities,

10  with Plaintiff able to perform those tasks occasionally with

11  items weighing between one and ten pounds, infrequently with

12  items weighing between eleven and twenty pounds, rarely with

13  items weighing between twenty-one and fifty pounds, and never

14  with items weighing more than fifty-one pounds.  Dr. Waraich

15  also found that Plaintiff was restricted in other ways,

16  including: (1) very limited ability to handle gross motor

17  gripping, holding, grasping, fingering, and fine motor

18  activities; (2) sitting limited to 20 minutes at a time, and

19  no more than 2 hours per day; (3) standing limited to 15

20  minutes at a time, and no more than 1 hour per day; (4)

21  walking limited to 15 minutes at a time, and no more than 1

22  hour per day.[4]  AR, SCE001975.

23  _____

24      [3]  DNS was implemented for use by all Customer
    Specialists at least as of May 2009 and greatly reduced the
25  amount of keyboarding required for the job.  AR,
    SCE002152-002161 and  SCE002156.

26      [4]  The Job Analysis reveals that Plaintiff's Customer
    Specialist 2 position requires very little or no walking,
27  bending, squatting, kneeling, twisting, climbing, lifting,
    carrying, pulling, or pushing. Rather, the Customer
28  Specialist 2 position appears to be a relatively sedentary
                                      (continued...)

1   Based on the Job Analysis provided to Dr. Waraich, he
2   found that Plaintiff could not perform the job requirements
3   of fine manipulation (1.16-1.35 hours/day to 3 hours/day),
4   standing "minimally to constantly," or sitting 5 minutes-1.25
5   hours or constantly 6-8 hours.  AR, SCE001976.  As a result,
6   Dr. Waraich opined that Plaintiff was "unable to fulfill the
7   substantial and material duties of her usual occupation as a
8   Customer Specialist 2."  AR, SCE001976.  Dr. Waraich
9   recommended that Plaintiff be reassessed in one year because
10  he believed that her condition could be controlled by new
11  medication, which would take at least six months to show its
12  full effect, and because certain aspects of her condition,
13  including her back pain, could change over time.  AR,
14  SCE001977.

15  **C.   Plaintiff's Treatment with Dr. Neal in 2013**

16  Following Dr. Waraich's IME, Plaintiff continued to see
17  her treating physician, Dr. Neal, for her rheumatoid
18  arthritis and related conditions.[5]  In January and March 2013,
19  Dr. Neal determined that Plaintiff suffered from rheumatoid
20  arthritis, chronic pain and fibromyalgia, anteriolithesis and
21  spinal stenosis, and degenerative disc disease.  AR,

22  _____

23  [4](...continued)
    office job that would not involve the types of activities on
24  which Dr. Waraich placed restrictions, and which allows
    employees to sit or stand at their discretion while
25  performing their job duties.  *See* AR, SCE002156-2158.

26  [5]  In 2011, Plaintiff saw Dr. Neal several times, and he
    concluded she was suffering with rheumatoid arthritis,
27  osteoarthritis, chronic pain, depression, and severe
    degenerative disc disease.  In approximately November 2012,
28  Plaintiff again saw Dr. Neal, who concluded that Plaintiff's
    medical conditions rendered her disabled, and that she would
    "never" be able to return to work.  AR, SCE000607.

SCE001997, SCE002002.  In December 2013, Dr. Neal submitted an Attending Physician's Statement to Sedgwick, which listed rheumatoid arthritis and chronic pain syndrome as the "impairments affecting [Plaintiff's] present condition."  AR, SCE002061.

Pursuant to Sedgwick's request, Dr. Neal submitted updated medical records on or around February 4, 2014, which indicated that Plaintiff was suffering from the following: (1) rheumatoid arthritis; (2) chronic pain and fibromyalgia; (3) anteriolithesis with spinal stenosis; and (4) degenerative disc disease.  AR, SCE00309-314.  Dr. Neal also submitted an updated Attending Physician's Statement on or around February 2014, which listed the same two conditions, rheumatoid arthritis and chronic pain syndrome, as "impairments affecting [Plaintiff's] present condition."  AR, SCE0002075.

**D.  Plaintiff's 2014 Independent Medical Exam**

Based on a review of the medical records received from Plaintiff's treating physician, Sedgwick determined that another IME was necessary to re-evaluate Plaintiff's current work capacity and address the duration of her disability.  AR, SCE002077.  Therefore, on March 31, 2014, Plaintiff was examined by Dr. Ramachandran Srinivasan, M.D., board certified in rheumatology.  AR, SCE000287-00302.  Dr. Srinivasan conducted a full physical examination of Plaintiff, spoke to Plaintiff about her chief complaints and symptoms, and reviewed her historical medical records, consisting of reports from 13 different visits with doctors

1  between 2012 and her examination by Dr. Srinivasan in 2013,
2  and all of the records provided by Dr. Neal.  AR,
3  SCE000287-302.

4      Based on his review of Plaintiff's medical records and
5  his physical examination of Plaintiff, Dr. Srinivasan found
6  that there was no "evidence of synovitis of any particular
7  joint," that Plaintiff had "no limitation in movements in her
8  hands, elbows, shoulders, knees, ankles, or feet," and that
9  there was "no evidence of rheumatoid nodules" or "active
10 inflammatory joint disease."  AR, SCE000299.  However, Dr.
11 Srinivasan noted that Plaintiff had "mild limitation of
12 movement in the cervical and lumbosacral spine."  AR,
13 SCE000299.  Based on these findings, Dr. Srinivasan concluded
14 that Plaintiff was suffering from: rheumatoid arthritis that
15 was stable and well-controlled; psoriasis on her right elbow;
16 status post carpal tunnel release in both hands; status post
17 tendon release in her right elbow; trigger finger release;
18 and a history of fibromyalgia.  AR, SCE000298-299.  In
19 connection with these conditions, Dr. Srinivasan recommended
20 the following permanent restrictions, which he believed were
21 appropriate based on Plaintiff's conditions: (1) "[a]void
22 frequent repetitive movements involving the hands such as
23 when performing fine manipulation and simple grasping"; (2)
24 "[m]ay perform fine manipulation and simple grasping no more
25 than on an occasional basis as required by her occupation (up
26 to 33% of the workday)"; and (3) "[n]o lifting/carrying
27 greater than 10 pounds and no more than occasionally with
28 both hands and wrists (up to 33% of the workday)."  AR,

10

SCE000299; SCE002098.  Based on the current 2014 Job Analysis Report for Plaintiff's Customer Specialist position[6] provided to Dr. Srinivasan, he concluded that Plaintiff's work restrictions "do not preclude her from performing the material and substantial duties of her usual occupation as a Customer Specialist 2."  AR, SCE000300.

**E.   Sedgwick Informs Plaintiff Her Benefits Are Being Discontinued, and Plaintiff Appeals.**

Following Dr. Srinivasan's IME, Sedgwick presented Dr. Srinivasan's work related restrictions to Plaintiff's work location and determined that the restrictions were consistent with Plaintiff's normal job duties and confirmed that no specific accommodations were necessary to allow Plaintiff to return to work.  AR, SCE000041-000042 and SCE000059-000067. On May 19, 2014, Sedgwick, on behalf of the Plan, informed Plaintiff that her benefits would be terminated, effective July 1, 2014, because it had determined that Plaintiff was no longer precluded from performing her own occupation as a Customer Specialist 2 and, therefore, as of May 19, 2014, no

---

[6]   The Job Analysis Report for Plaintiff's Customer Specialist position in 2014 stated that "[e]mployee uses Dragon Naturally Speaking software, which allows the employee to speak commands into a microphone headset, which then changes the computer screens and/or types of information or populates customer information on the screen without the use of a computer keyboard or mouse."  AR, SCE002155-002156.  The Job Analysis Report also stated that "[e]ach verbal command can eliminate 1 to 7 steps, which would normally require the use of a computer keyboard or mouse" and "an average command can save up to 20 keystrokes."  AR, SCE002156.  In addition, the Job Analysis Report stated that fingering of a keyboard is limited to approximately five minutes per hour or forty minutes per day (or eight percent of the workday), while fingering of a mouse is approximately nine minutes per hour (or fifteen percent of workday).  AR, SCE002160-002161.

longer qualified for benefits under the Plan.  AR,
SCE002096-002098.  The decision to terminate Plaintiff's
benefits was based on the Plan's definition of disability,
the IME performed by Dr. Srinivasan, and the determination by
Plaintiff's work location that the work restrictions would
not prevent her from performing her own occupation, without
accommodation.  AR, SCE002096-002098.  Plaintiff was informed
that she could appeal the Plan's decision, and was advised
that she could submit "comments, records, or other
information" that she felt should be considered during the
appeals review process.  AR, SCE002100 and SCE002104.

On May 28, 2014, Plaintiff filed her appeal.  *Id.*  At
some point during the appeals process, Plaintiff informed
Sedgwick that she would provide updated medical information
because she was being treated by a new physician.  AR,
SCE002244.  Plaintiff then submitted a report dated April 12,
2014 from her new treating physician, Dr. Andre Babajanians.
AR, SCE002138-2139.  Dr. Babajanians found that Plaintiff was
suffering from the following conditions: (1) rheumatoid
arthritis; (2) chronic pain syndrome, (3) fibromyalgia, and
(4) history of gastro esophageal reflux.  AR, SCE002139.  Dr.
Babajanians ordered x-rays of Plaintiff, which were taken on
June 4, 2014, and which found that Plaintiff had "normal
feet," "normal hands," and "normal hips."  AR,
SCE002140-2142.  Other than Dr. Babajanians's April 12, 2014
report and the June 2014 x-ray results, Dr. Babajanians did
not submit any further reports or information to Sedgwick.
AR, SCE002138-2142.

1    The appeals process involved an extensive review of
2    Plaintiff's file in July 2014 by a panel of three board
3    certified rheumatologists, Rajendra K. Marwah, M.D., Mark
4    Borigini, M.D., and  Dennis Payne, Jr., M.D., and a further
5    review by Sedgwick.   The reviewing physicians were provided
6    with the Progress Notes from all of Plaintiff's treating
7    physicians from 2010 to 2014, including both Dr. Neal and Dr.
8    Babajanians, the IME reports by Dr. Waraich and Dr.
9    Srinivasan, x-rays, MRI results, and all of Plaintiff's lab
10   results from 2011 to 2014.   AR, SCE002252, SCE002259, and
11   SCE002263.

12       Dr. Marwah found that Plaintiff was not disabled and
13   would be able to return to work without any restrictions.
14   AR, SCE002256.   Dr. Marwah, who is board certified in
15   rheumatology, acknowledged that Plaintiff suffered with
16   psoriatic arthritis, fibromyalgia, and degenerative cervical
17   and lumbar disc disease, but found that Plaintiff did not
18   require any restrictions or limitations as a result of these
19   conditions because it was documented based on Plaintiff's
20   examination that she had no synovitis, normal range of motion
21   in the joints, normal laboratory inflammation markers,
22   negative rheumatoid factors, negative cyclic citrullinated
23   peptide (CCP), and normal x-rays of the hands, feet, knees,
24   and hips.   Ultimately, Dr. Marwah concluded that "Ms. Baca
25   should be able to perform her regular job without any
26   restrictions or limitations."   AR, SCE002252-2258 and
27   SCE002256.

28

1    Dr. Borigini, who is also board certified in
2  rheumatology, concluded that Plaintiff suffered from
3  rheumatoid arthritis, degenerative disease of the lumbar
4  spine without myelopathy, and chronic pain syndrome.  He
5  found that Plaintiff was documented in the past to have had
6  diffuse pain and swelling of the joints, but more recently
7  was noted to have no active synovitis, no erosions on x-rays,
8  and seronegative laboratory results that indicate less severe
9  rheumatoid arthritis.  Dr. Borigini concluded that Plaintiff
10  would require temporary restrictions for six months while she
11  continued treatment with a multi-modal approach and
12  compliance to medications.  Dr. Borigini recommended the
13  following restrictions for Plaintiff: (1) fine manipulation
14  and grasping, which included keyboarding and mousing, on only
15  an occasional basis; and (2) no lifting or carrying more than
16  ten pounds and only on an occasional basis.  Dr. Borigini
17  concluded that Plaintiff's "job is not requiring of heavy
18  physical labor.  A Customer Specialist should be able to
19  perform her work with her condition."  AR, SCE002259-2262;
20  SCE002261.

21    Finally, Dr. Payne, who is also board-certified in
22  rheumatology, concluded that Plaintiff suffered from
23  rheumatoid arthritis, fibromyalgia, and osteoarthritis.  He
24  found that based on Plaintiff's documented medical condition,
25  she would require temporary restrictions for sixty days while
26  continuing treatment. The restrictions recommended by Dr.
27  Payne included: (1) no carrying or lifting over ten pounds;
28  and (2) a requirement that Plaintiff stand and walk for 10

minutes per hour in an eight hour day, with the ten minutes being either consecutive or cumulative over an hour and equivalent to eighty minutes of standing and walking in an eight hour day.  Dr. Payne concluded that Plaintiff could perform the substantial material duties of her usual occupation "as the duties of this position fall within the realm of her residual capabilities."  AR, SCE002263-2269.

Each of the three doctors indicated they reviewed Plaintiff's prior MRI scans and x-rays, as well as all the records from Plaintiff's various treating physicians.  AR, SCE002252, *et seq.*; SCE002259, *et seq.*; and SCE002263, *et seq.*  In addition to considering Plaintiff's arthritis, the three panel doctors also reviewed her related conditions of fibromyalgia, chronic pain syndrome, and her spinal condition and degenerative disc disease.  *See, e.g.*, AR, SCE002256 (noting fibromyalgia, degenerative cervical, and lumbar disc disease); SCE002260 (noting degenerative disc disease of lumbar spine and chronic pain syndrome); SCE002266 (diagnosis is rheumatoid arthritis, fibromyalgia, and osteoarthritis, and notes a pars defect in her lumbar spine).  Based on the totality of Plaintiff's condition, each of the three panel doctors found that she could perform her regular job with few or no restrictions.  AR, SCE002256, SCE002261, and SCE002267.

The restrictions recommended by Dr. Borigini and Dr. Payne were presented to Plaintiff's work location for review and consideration.  AR, SCE000020-21.  Sedgwick, on behalf of the Plan, also discussed the restrictions with Plaintiff's work location and Dr. Borigini and Dr. Payne in order to

obtain clarity on the scope of the restrictions.  AR,
SCE000020-21 and SCE002273-002277.  After reviewing the
restrictions with Plaintiff's work location, it was
determined that the restrictions fell within Plaintiff's
normal job duties as a Customer Specialist 2.  SCE000020-21.
Thus, based on the panel doctors' reviews and the medical
documentation in Plaintiff's claim file, Sedgwick determined
that the objective medical evidence failed to support an
impairment that precluded Plaintiff from performing any
reasonable job for SCE, including her own as a Customer
Specialist 2.  AR, SCE002295-002298.

On July 16, 2014, Sedgwick wrote to Plaintiff and
explained in detail the basis for the denial of her appeal.
AR, SCE002295-002298.  The letter explained that the denial
was based on the IME, the Panel Reviews, and the medical
documentation in Plaintiff's file.  *Id.*  In addition, the
letter explained that the Job Analysis for Plaintiff's
position and discussions with her work location both
indicated that Plaintiff would be able to perform her usual
occupation without any accommodations needed.  AR,
SCE000020-21, SCE002152-002161, and SCE002295-002298.

In making its determination to deny benefits, Sedgwick
also informed Plaintiff that it had considered the fact that
she had been approved for SSDI as of April 1, 2011.  AR,
SCE002295.  Sedgwick acknowledged that it had not been
informed of the basis for her approval of SSDI benefits, but
noted that it was likely based on a different standard of
benefit eligibility than the standards under the Plan, and

1  that there may have been additional underlying medical

2  information submitted in the SSDI process that was not

3  submitted to the Plan, or may have had relatively less

4  rigorous case management than Plaintiff's LTD file.  AR,

5  SCE002295.

6  **Conclusions Of Law**

7  **I.   Jurisdiction And Venue**

8       This action involves the denial of benefits to an

9  employee of long term disability payments under an employee

10 welfare benefit plan regulated by ERISA.  As such, the Court

11 has original jurisdiction over this matter under 28 U.S.C. §

12 1331 and 29 U.S.C. § 1132(a)(1)(B).  Venue in the United

13 States District Court for the Central District of California

14 is invoked pursuant to 29 U.S.C. § 1132(e)(1).

15      The parties do not dispute the facts requisite to federal

16 jurisdiction and venue.

17 **II.  Standard Of Review**

18      A denial of benefits must be reviewed under a *de novo*

19 standard unless "the benefit Plan gives the administrator or

20 fiduciary discretionary authority to determine eligibility

21 for benefits or to construe the terms of the Plan."

22 *Firestone Tire and Rubber Co. v. Brunch*, 489 U.S. 101, 115

23 (1989).  If the Plan confers discretionary authority as a

24 matter of contractual agreement, then the standard of review

25 shifts to abuse of discretion.  *Abatie v. Alta Health & Life*

26 *Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (*en banc*).

27 "[F]or a plan to alter the standard of review from the

28 default of *de novo* to the more lenient abuse of discretion,

the plan must unambiguously provide discretion to the administrator." *Id.* "When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision ... deferential review is not warranted." *Jebian v. Hewlett-Packard Co. Employee Org. Income Prot.*, 349 F.3d 1098, 1105 (9th Cir. 2003)(*quoting Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001)).  Where a seemingly unauthorized body renders a decision regarding benefits eligibility, courts look to whether "the Disability Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there was evidence establishing delegation" to the third party. *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1171 (9th Cir. 2007).

The record demonstrates that the Plan clearly provides that the Committee may delegate authority to "one or more persons" to "carry out" the "responsibilities" of "determin[ing] eligibility to participate in the plans, to determine covered benefits, and to interpret, construe and apply the terms and provisions of the plans." AR, SCE001140. In addition, the Plan provides that the LTD Administrator shall have "discretion" to determine eligibility for benefits. AR, SCE001011; SCE001017. Moreover, as provided in the ASA entered into by the Plan and Sedgwick, the Committee has delegated all aspects of the LTD claims process to Sedgwick as the LTD Administrator, including determination of eligibility for benefits and disability determinations on appeal. Jacobs Decl., Exh. A. Therefore, the Court

concludes that the Plan has unambiguously given Sedgwick, the claims administrator, discretion to determine plan participants' eligibility for disability benefits.  *See, Barnett v. So. Cal. Edison Co. LTD Plan*, 2013 WL 2190160 (E.D. Cal. May 20, 2013) (holding that the Plan's delegation to Sedgwick is proper, and, therefore, the proper standard of review for a denial of benefits under the SCE LTD Plan is abuse of discretion).

Because there was a valid delegation of authority, the Court concludes that the applicable standard of review is abuse of discretion.  *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (a deferential standard of review is warranted if the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (no "magic" words that are required to "conjure up discretion on the part of the plan administrator).

**III. Discussion**

    **A.   The Abuse of Discretion Standard**

Under the abuse of discretion standard, a benefits decision cannot be reversed unless the court is "left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011).  The Ninth Circuit has found that the plan administrator's decision can be upheld "unless it is not grounded on any reasonable basis." *Id.*, at 673.

The abuse of discretion standard is synonymous with the arbitrary and capricious standard. *Schikore v. Bankamerica Supp. Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001).

Plan administrators abuse their discretion when they render decisions without any explanation, or construe provisions of the plan in a way that conflicts with the plain language of the plan. *Id.* at 960. Similarly, the Ninth Circuit has held that an abuse of discretion occurs when a plan administrator fails to develop facts necessary to make its determination. *Id.* "In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." *Boyd v. Bert/Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173 (9th Cir. 2005). The existence of even a "single persuasive medical opinion" supporting the administrator's decision can be sufficient to affirm, so long as the administrator does not construe the language of the plan unreasonably or render its decision without explanation." *Montour v. Hartford Life & Accident Insurance Company*, 588 F.3d 623, 629 (9th Cir. 2009). So long as the administrator's decision has a rational basis, the Court is not free to substitute its own judgment for that of the administrator in determining the eligibility for plan benefits even if the court disagrees with that decision. *Thompson v. Ins. & Benefits Trust/Comm. Peace Officers Research Ass'n of California*, 670 F.Supp. 2d 1052, 1066 (E.D. Cal. 2009).

**B.   There Was No Abuse of Discretion in This Case.**

Based on a careful and thorough review of the administrative record, the Court concludes that the Plan did not abuse its discretion in terminating Plaintiff's LTD benefits.  Rather, the evidence demonstrates that the Plan reasonably concluded that Plaintiff no longer fell under the Plan's definition of "disabled."  In accordance with the Plan's language, Sedgwick used its delegated discretion to review and evaluate the medical evidence pertaining to Plaintiff and to make a factual determination regarding her continued eligibility for benefits.

In addition, Sedgwick used its delegated authority to make a determination on Plaintiff's appeal.  Sedgwick did so in accordance with Plan provisions, and there is no evidence that there were any irregularities in the process.  The termination of benefits was based on the medical judgment of a panel of board certified physicians in the field of rheumatology.  AR, SCE002252-2269.

Plaintiff no longer qualified as disabled under the Plan according to four different and highly qualified medical professionals in the relevant filed of rheumatology.  AR, SCE000287-297, SCE002263-2269, SCE002252-2258, and SCE002259-2262.  The Plan developed sufficient facts necessary to make its determination that Plaintiff no longer qualified as disabled under the Plan and rendered its decision with a detailed explanation of the reason for the denial of benefits.  The decision to terminate benefits was based on a thorough review of Plaintiff's medical condition and was consistent with the opinions of four doctors and an

evaluation of her work restrictions by her work location.
AR, SCE000020-21, SCE000041-000042, SCE000059-000067,
SCE002273-002277, SCE000287-297, SCE002263-2269,
SCE002252-2258, and SCE002259-2262.

For example, although the determination was made that
Plaintiff could return to work as a Customer Specialist 2,
the IME and panel physicians that examined Plaintiff and her
medical records acknowledged and took into account the fact
that Plaintiff was suffering from various medical issues
including degeneration of parts of her spine, but found that
nothing about her condition prevented her from performing her
job duties.  Dr. Srinivasan, who performed Plaintiff's 2014
IME, specifically noted in his report that he examined
Plaintiff's spine and found that she had "mild limitation of
movement in the cervical and lumbosacral spine."  AR,
SCE000299.  Similarly, panel physician Dr. Marwah
specifically stated that he reviewed all of Plaintiff's
medical records, scans, and lab results and found that
Plaintiff has "degenerative cervical and lumbar disc
disease."  AR, SCE002256.  However, Dr. Marwah found that
this particular condition "would not preclude her from
performing her regular job or any similar job."  AR,
SCE002256.  In addition, panel physicians Dr. Borigini and
Dr. Payne both stated that they reviewed Plaintiff's prior
MRIs and X-rays of her spine.  AR, SCE002260 and SCE002266.
Dr. Borigini noted that Plaintiff's MRI showed "trace
neuroforaminal narrowing and some degenerative changes," but
found that, even considering this diagnosis, Plaintiff had

22

only limited work restrictions and could perform her regular occupation.  AR, SCE002260.  Dr. Payne also specifically took into account Plaintiff's degenerative spinal condition in evaluating her medical condition and when establishing the parameters of his very limited work restrictions.  AR, SCE002264-2266.

In reaching the conclusion that Plaintiff no longer qualified as disabled under the Plan, the Plan obtained and relied on reports from four different and independent doctors specializing in rheumatology.[7]  AR, SCE000287-297, SCE002263-2269, SCE002252-2258, and SCE002259-2262.  Each doctor reviewed Plaintiff's medical evidence, including x-rays, MRI reports, treating physician records, progress notes, daily activities questionnaires, and two IME reports. AR, SCE000287-297, SCE002252, SCE002259, and SCE002263.  Each of the doctors independently concluded that Plaintiff was capable of gainful employment in her usual occupation.  AR, SCE000300, SCE002263-2269, SCE002267, SCE002252-2258, SCE002256, SCE002259-2262, and SCE002261.  Indeed, one of the doctors concluded that Plaintiff did not have any restrictions at all.  AR, SCE002256.  In addition, at both the benefits denial stage in May 2014 and at the appeals stage in July 2014, Sedgwick communicated with Plaintiff's work location to ensure that the restrictions recommended by

_____

[7]   The Court has considered the Plaintiff's criticism of the qualifications of the panel doctors in light of the exclusion of their opinions in other cases.  However, the Plan has satisfactorily explained the circumstances of each of those cases.  Accordingly, the Court does not find Plaintiff's criticism persuasive.

the doctors could be accommodated by her work location.  AR, SCE000020-21, SCE000041-000042, SCE000059-000067, and SCE002273-002277.  Based on the opinions of the four doctors, Sedgwick determined that Plaintiff could perform her regular occupation as Customer Specialist 2 without any accommodations.  AR, SCE002295-002298.  After carefully reviewing the voluminous record in this case, the Court concludes that there was no abuse of discretion with respect to the termination of Plaintiff's LTD benefits.

**C.   Plaintiff's SSDI Benefits Do Not Preclude a Finding That She No Longer Qualifies as Disabled Under the Plan.**

Plaintiff argues that the Plan's decision to deny her benefits was an abuse of discretion, and that this conclusion is supported by the fact that the Social Security Administration awarded her disability benefits.  However, the Social Security Administration's decision to award a claimant Social Security benefits is not binding on a plan administrator.  *Madden v. ITT Long Term Disability Plan*, 914 F. 2d 1279, 1285 (9th Cir. 1990) (affirming plan administrator's decision denying disability benefits, even though claimant received SSA benefits, because claim file contained evidence in support of plan administrator's decision).  In addition, a decision by the Social Security Administration that an individual is disabled does not necessarily "undermine" a decision by an ERISA Plan administrator that the individual is not disabled.  *Daic v. Haw. Pac. Health Group Plan*, 291 Fed. Appx. 19, 21 (9th Cir.

24

2008).  "The social security disability analysis is different
than the ERISA analysis, not least because the social
security disability standard involves special deference to
the opinions of the claimant's treating physician . . .
[T]his deferential standard is not applicable in the ERISA
context."  *Id.* at 21, *citing, Black & Decker Disability Plan
v. Nord*, 538 U.S. 822, 831 (2003).

     Moreover, as one court concluded, there are no cases in
which "a court has determined a claimant to be entitled to
plan benefits solely because the plan administrator
encourages a claimant to apply for SSA benefits and
thereafter offsets plan benefits by SSA benefits."  *Smith v.
Hartford Life & Accident*, 2013 WL 394185, *26 (N.D. Cal. Jan.
30, 2013).  Rather, courts have held that such conduct "does
not provide an independent basis" for judgment in favor of
the claimant.  *Id*.

     In this case, the Plan, like all ERISA plans, has a duty
to conserve plan assets.  29 U.S.C. § 1103 (assets of plan
not to inure to benefit of employer and shall be held for the
exclusive purposes of providing benefits to participants in
the plan and their beneficiaries and defraying reasonable
expenses of administering the plan).  One way in which plan
assets are conserved is coordination of benefits provisions.
Thus, ERISA plans commonly require beneficiaries to seek
benefits for the benefit-enabling event from all available
sources, and it coordinates those benefits with the
distribution of Plan benefits.  As a result, it is certainly
permissible for a plan to require a participant to seek SSDI

benefits, and then offset those benefits in determining the amount of benefits the Plan will pay.  AR, SCE001013-001014. Moreover, there is nothing in the Plan's coordination of benefit provisions that suggests that the award of any other benefits, including SSDI benefits, would preclude a finding of non-entitlement of benefits by the Plan, particularly in light of the fact that SSDI benefit eligibility is based on an entirely separate standard.  AR, SCE001013-001014.

The Plan does have an obligation to review the award of SSDI benefits, and consider whether that decision had any impact on Plaintiff's eligibility for benefits under the Plan because a failure to distinguish the Social Security Administration's contrary conclusion could indicate a failure to consider relevant evidence.  *See, e.g., Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009) ("While ERISA plan administrators are not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was 'the product of a principled and deliberative reasoning process'") (internal quotation omitted).  However, in this case, the Court concludes that the administrative record demonstrates that the Plan clearly did consider the award of SSDI benefits, and it specifically explained in its denial letter that SSDI awards are governed by different standards.  AR, SCE002295.

      **D.   The Plan Considered All the Evidence Presented to It in Making Its Decision.**

1    Plaintiff also argues that the Plan failed to consider
2  the totality of her medical condition.  However, the
3  administrative record is clear that each of the four doctors
4  that determined Plaintiff no longer qualified as disabled
5  under the Plan did in fact review and comment on all of
6  Plaintiff's medical conditions.  *See, e.g.,* AR, SCE000299,
7  SCE002256 (noting fibromyalgia, degenerative cervical and
8  lumbar disc disease), SCE002260 (noting degenerative disc
9  disease of lumbar spine, chronic pain syndrome), and
10  SCE002266 (diagnosis is rheumatoid arthritis, fibromyalgia,
11  and osteoarthritis, and notes a pars defect in her lumbar
12  spine).
13    For example, although Plaintiff argues that Dr.
14  Srinivasan did not review the imaging regarding her spinal
15  condition, he repeatedly references her spinal condition,
16  indicating that he relied on it in reaching his conclusions.
17  Specifically, Dr. Srinivasan notes that, in January 2013 and
18  October 2013, Plaintiff had "L5-S1 anterolisthesis with
19  multilevel neural foraminal spinal stenosis" and "multilevel
20  degenerative disc disease and cervical joint disease."  AR,
21  SCE0000295-297.  In addition, Dr. Srinivasan conducted an
22  independent range of motion study on Plaintiff's cervical and
23  lumbar spine.  AR, SCE0000294-295.  Similarly, although
24  Plaintiff argues that none of the Plan's doctors took into
25  account her pain, Dr. Srinivasan repeatedly noted her
26  subjective complaints of pain.  AR, SCE0000287-297.
27    Dr. Marwah also noted that Plaintiff suffered from
28  degenerative disc disease and fibromyalgia, but found that

1  those conditions did not prevent Plaintiff from performing

2  her regular job duties.  AR, SCE002255-2257.  In reaching his

3  conclusion, Dr. Marwah reviewed the medical reports from

4  Plaintiff's treating physicians, but ultimately gave more

5  credit to Dr. Srinivasan's IME report.  *Id.*

6      Moreover, although Plaintiff argues that Dr. Borgini

7  "hardly reviewed" any of her medical records, the

8  administrative record demonstrates that he was provided with

9  and reviewed all of Plaintiff's medical records from 2010 to

10  2014, and he specifically makes reference in his report to

11  Plaintiff's medical "history," "past diagnostic evaluation,"

12  and lab results.  AR, SCE002260-2262.  Dr. Borigini also

13  specifically discussed the fact that Plaintiff suffered with

14  "rheumatoid arthritis, degenerative disease of lumbar spine

15  without myelopathy," "chronic pain syndrome," and "diffuse

16  pain due to fibromyalgia."  AR, SCE002260.  Dr. Borgini also

17  noted Plaintiff's subjective reports of pain, and concluded

18  that she should receive "pain management" treatment" and that

19  Plaintiff would benefit from a "multi-modality approach to

20  the chronic pain."  AR, SCE002262.

21      Furthermore, although Plaintiff argues that Dr. Payne

22  never "discussed the possibility that her pain could be the

23  result of fibromyalgia and/or spinal conditions," Dr. Payne

24  did, in fact, repeatedly note Plaintiff's subjective

25  complaints of pain throughout his report and acknowledged

26  that Plaintiff is suffering with "rheumatoid arthritis,

27  fibromyalgia, and osteoarthritis" as well as a spinal

28  condition.  AR, SCE002266-2268.

Finally, if Plaintiff believed that there was additional evidence that the Plan should have considered in making its benefits determination, she had every opportunity to present such evidence. AR, SCE002100. In fact, the administrative record demonstrates that Plaintiff did present evidence from her new treating physician, Dr. Babajanians, during the appeals process, and that the Plan considered this new evidence in making its determination on appeal. AR, SCE002138-2142. Therefore, to the extent Plaintiff failed to bring other evidence to the Plan's attention, despite specifically being invited to do so, she is not entitled to a second chance to prove her disability in this Court. *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) (holding that an administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it); *Mayes v. Std. Ins. Co.*, 2014 WL 4725452 (D.Kan. Sept. 24, 2014) (holding that an ERISA insurer does not have an affirmative duty to "seek out evidence to support a claim of disability"); *Echague v. Metro. Life Ins. Co.*, 43 F. Supp. 3d 994, 1009-10 (N.D. Cal. 2014).

Although Plaintiff argues that the Plan failed to consider the totality of her medical condition, Plaintiff's real disagreement with the Plan turns on the parties' respective interpretation of the medical evidence. As explained above, at the time that the Plan made the decision to terminate Plaintiff's LTD benefits, there was ample evidence before it that supported a finding that Plaintiff no

longer qualified as disabled under the Plan.  *See, Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 (11th Cir. 1997) (the plan administrator was justified in denying plaintiff's claim despite the treating physician's conclusion that she was disabled); *Sandoval v. Aetna Life Insurance and Casualty Insurance Co.*, 967 F.2d 377 (9th Cir. 1992) (denial of claim in the face of physicians' reports reaching contrary conclusions regarding disability was upheld); *Steinmann v. Long Term Disability Plan of May Dept. Stores Co.*, 863 F.Supp. 994 (E.D. Mo. 1994) (despite the treating physician's conclusion that the claimant was disabled, the plan administrator was justified in denying benefits on the basis that there was an absence of persuasive evidence of disability).

In addition, the opinions on which the Plan relied were not, on their face, irrational, unreasonable, or the clear product of a self-interest.  While they differed from the opinions provided by Plaintiff's treating physicians, those opinions suffer from a lack of diagnostic precision and were conclusionary in that they lack a full explanation of the reasons and factual basis for their opinions.  For example, Dr. Neal in November 2012 reported that Plaintiff could "never" return to work.  AR SCE0000607.  However, in 2013, he reported that Plaintiff would be able to return to work in 3-6 months.  AR, SCE0002061.  In February 2014, without explanation, Dr. Neal again reported that Plaintiff could never return to work.  AR, SCE0002075.

The mere fact that the Plan accepted the opinions of Dr. Srinivasan, Dr. Marwah, Dr. Borigini, and Dr. Payne rather than those of Plaintiff's treating physicians is not proof of arbitrary or capricious conduct. *See, Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602 (5th Cir. 1994) (upholding a benefits denial decision based on the medical consultants' opinions that were contrary to those of plaintiff's treating physicians). *Cf. Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict"); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (*per curium*) (as amended) (holding that "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings"); *see also Brooks v. The Guardian Life Ins. Co.*, 995 F.Supp. 1174, 1180 (D.Kan. 1998) (denial of claim when independent medical reviewer disagreed with conclusions of claimant's personal physician); *Best v. Nissan Motor Corp.*, 973 F.Supp. 770, 777 (M.D. Tenn. 1997) (it was not an abuse of discretion to rely on consistent opinions of two independent medical reviewers contrary to opinion of treating physician).

**IV.   Conclusion**

1    For all of the foregoing reasons, the Court finds that

2 the Plan did not abuse its discretion when it terminated

3 Plaintiff's disability benefits.   Accordingly, the Court

4 enters judgment in favor of the Plan.

5    Counsel shall meet and confer and prepare a joint

6 proposed Judgment consistent with the Court's Findings of

7 Fact and Conclusions of Law.   The joint proposed Judgment

8 shall be lodged with the Court on or before **December 7, 2015.**

9 In the unlikely event that counsel are unable to agree upon a

10 joint proposed Judgment, the parties shall each submit

11 separate versions of a proposed Judgment along with a

12 declaration outlining their objections to the opposing

13 party's version on or before **December 7, 2015.**

14

15

16 Dated: November 25, 2015    _____

17                             JOHN F. WALTER
                        UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28